490 So.2d 976 (1986)
Margaret FINKELSTEIN, Jill Finkelstein and Diane Finkelstein, Appellants,
v.
SOUTHEAST BANK, N.A., Appellee.
No. 85-759.
District Court of Appeal of Florida, Fourth District.
May 7, 1986.
Rehearing Denied; Motion to Dismiss Appeal and Withdraw Opinion Denied July 24, 1986.
*978 Edward J. Schack, Coral Gables, and Marc A. Kuperman of Kuperman & Mermell, Coral Gables, for appellants.
Frank P. Scruggs, II, and Merry E. Lindberg of Steel Hector & Davis, Miami, for appellee.
DELL, Judge.
Margaret Finkelstein and her daughters, Jill and Diane Finkelstein, appeal from an order granting temporary injunction which enjoins dissipation or disposal of the principal of the Finkelstein family trust. Appellee Southeast Bank (Southeast) sought and obtained the temporary injunction in conjunction with its suit to recover monies allegedly lost as a result of violations of the Florida RICO (Racketeer Influenced Corrupt Organization) Act, Chapter 895, Florida Statutes (1983), and violations of the Florida Anti-Fencing Act, Chapter 812, Florida Statutes (1983).
Southeast alleged that Margaret Finkelstein's husband, Paul Finkelstein, Lawrence Austin and others operated a telephone solicitation office (described as a "boiler room" operation) engaged in the sale of gems, which they misrepresented as investment grade gems and sold at outrageously high prices. They processed credit card charges at Southeast Bank, which would credit them immediately for credit card sales. Southeast alleged that Paul Finkelstein and others, as part of the "boiler room" operation, made unauthorized charges against the credit card customers. When the cardholders complained, Southeast issued credits to their accounts. After unsuccessful attempts to gain reimbursement from the principals involved in the "boiler room" operation, Southeast filed suit. Southeast later amended its initial complaint to add Margaret Finkelstein and her daughters as defendants in the pending lawsuit. The amended complaint alleged that Margaret Finkelstein associated with her husband Paul Finkelstein and Lawrence Austin for the purpose of sequestering the proceeds derived from the gem sale operations and the credit card operation, and that the Finkelstein family trust constituted an enterprise within the meaning of the RICO Act.
The trial court entered a preliminary injunction, and subsequently two separate temporary injunctions. First, the trial court entered a preliminary injunction (June 1, 1984) which had enjoined all "persons *979 in active concert or participation with Defendant, PAUL FINKELSTEIN," from disposing of assets, including assets in the family trust. That preliminary injunction order did not name appellants. Then, on August 28, 1984, the trial court entered an agreed temporary restraining order, enjoining the disposition of the corpus of the family trust, based on the consent of Margaret Finkelstein and her daughters. Subsequently, after the agreed temporary restraining order had expired by its own terms, Margaret Finkelstein and her daughters moved to exempt or exclude the family trust from the restraints of the preliminary injunction, which did not name them. Southeast thereupon filed a renewed motion for preliminary injunction with respect to the family trust. Southeast stipulated to treatment of the Finkelsteins' motion as a motion to dissolve the preliminary injunction, and both motions were considered simultaneously.
After an evidentiary hearing, the trial court denied the Finkelsteins' motion to dissolve the June 1, 1984 preliminary injunction, and entered a new temporary injunction which prohibited dissipation or disposal of the principal of the trust, but allowed the beneficiaries to receive the interest income from the trust. The court, ex parte, approved an injunction bond by Southeast in the sum of $25,000. This temporary injunction is the subject of this appeal.
Appellants contend that the trial court did not have jurisdiction of the Finkelstein family trust because Southeast did not sue them in their capacity as trustees. Appellants next argue that the trial court imposed the injunction without sufficient evidence to connect Margaret Finkelstein or the corpus of the trust to the alleged RICO activities. They argue in the alternative that the injunction should have been limited to those funds directly related to the RICO activities. Finally, they contend that the amount of the injunction bond is inadequate.
We find no merit in appellants' first point on appeal. Appellants appeared in this action and agreed to the entry of a temporary restraining order precluding dissipation of the principal of the trust. They did not raise jurisdiction as an issue in their motion to dismiss the complaint, or in their later motion to dissolve the agreed temporary restraining order (which was denied as moot, since it was filed after the agreed order had expired). By their actions, they waived any right to challenge jurisdiction because of appellee's failure to sue them in their capacity as trustees. Furthermore, the depository itself did not need to be named in the suit, where all parties interested in the trust res were before the court.
Southeast bases its claim for injunctive relief on Florida's Anti-Fencing Act, particularly Section 812.035(6), Florida Statutes (1983), and Florida's RICO (Racketeer Influenced and Corrupt Organizations) Act, Section 895.05(6), Florida Statutes (1983). Both statutes provide civil remedies to protect the rights of innocent persons and both expressly provide for injunctive relief. See Roush v. State, 413 So.2d 15 (Fla. 1982); DeLisi v. Smith, 401 So.2d 925 (Fla. 2d DCA 1981). However, the question presented in this case is one of first impression, since neither statute nor case law has addressed the issue raised here: whether an injunction may be issued prior to judgment barring appellants from disposing of assets in a private trust fund, in order to preserve sums for collection should appellee prevail on its claims of RICO violations or theft. We hold that such an injunction may be issued, but only if the requirements established herein have been satisfied.
We have looked for guidance in the case law interpreting the federal RICO statute, 18 U.S.C. §§ 1961-1968 (1970) (Title IX of the Organized Crime Control Act of 1970). However, despite the similarities between the federal statute and the Florida RICO Act, we have found no case directly on point, since the federal statute does not contain an express provision for injunctive relief such as that contained in Florida RICO. Federal courts have granted injunctions in RICO cases, but on grounds other *980 than the RICO statute. In USACO Coal Co. v. Carbomin Energy, 689 F.2d 94 (6th Cir.1982), the court of appeals in a RICO case affirmed the issuance of a preliminary injunction restraining defendants from dissipating certain assets pendente lite, upon a finding of a substantial likelihood that plaintiffs would prevail on their equitable claim for restitution based on allegations of breach of fiduciary duty. In Ashland Oil, Inc. v. Gleave, 540 F. Supp. 81 (W.D.N.Y. 1982), the district court granted preliminary injunctive relief restraining defendants from transferring their tangible assets or properties, based not on federal RICO, but rather upon the New York State law on attachment.
On the other hand, several cases not involving RICO have rejected injunctive relief in cases similar to this one. In ITT Community Development Corporation v. Barton, 569 F.2d 1351 (5th Cir.1978), the appeals court reversed an order which directed prejudgment garnishees not to transfer certain funds, and ordered them to pay the sums into the registry of the court in order to secure payment of a judgment which might subsequently be entered against garnishees. The district court in Barton based its order upon the Florida prejudgment garnishment statute. This court held in St. Lawrence Co. v. Alkow Realty, Inc., 453 So.2d 514 (Fla. 4th DCA 1984) that injunctive relief will not lie where its purpose is to restrain a seller from disbursing sale proceeds when an adequate remedy at law exists. See also Acquafredda v. Messina, 408 So.2d 828 (Fla. 5th DCA 1982) which held that a complaint on a promissory note does not state a claim in equity for an injunction to prevent a debtor from disposing of assets prior to judgment.
Section 895.05(6), Florida Statutes (1985), provides:
Any aggrieved person may institute a proceeding under subsection (1). In such proceeding, relief shall be granted in conformity with the principles that govern the granting of injunctive relief from threatened loss or damage in other civil cases, except that no showing of special or irreparable damage to the person shall have to be made. Upon the execution of proper bond against damages for an injunction improvidently granted and a showing of immediate danger of significant loss or damage, a temporary restraining order and a preliminary injunction may be issued in any such action before a final determination on the merits.
Section 812.035, Florida Statutes, also gives rise to injunctive relief in the Anti-Fencing Act. In Dania Jai-Alai International, Inc. v. Murua, 375 So.2d 57 (Fla. 4th DCA 1979), we recognized that "[g]enerally, a temporary injunction is an extraordinary remedy and will be granted sparingly only after the moving party has alleged and proven facts entitling it to relief." Id. at 58. The Florida RICO Act and Anti-Fencing Act provide that in such a proceeding, relief shall be granted in conformity with the principles that govern the granting of injunctive relief from threatened loss or damage in other civil cases.
As pointed out in DeLisi v. Smith, supra, the burden of proof is on the party seeking the injunction to make a prima facie case that he is entitled to such equitable relief. It is also true that the burden shifts to the movant on any subsequent motion to dissolve. Here, although appellants had filed a motion to dissolve the preliminary injunction, they were not actually named in it, and in fact it was Southeast's renewed motion for preliminary injunction which was the primary basis for the evidentiary hearing, which resulted in the court's order of temporary injunction. As such, we find that the burden rested with Southeast to establish a prima facie case of entitlement to temporary injunctive relief.
A party seeking an injunction under general Florida case law must demonstrate the following: (1) irreparable harm; (2) a clear legal right; (3) an inadequate remedy at law; (4) consideration of the public interest. See Islandia Condominium Association v. Vermut, 438 So.2d 89 (Fla. 4th DCA *981 1983); Contemporary Interiors, Inc. v. Four Marks, Inc., 384 So.2d 734 (Fla. 4th DCA 1980); and Dania Jai-Alai International, Inc. v. Murua, supra. The Florida RICO Act has eliminated the necessity of showing special or irreparable damage as a prerequisite to recovery, substituting it with the requirement of showing immediate danger of significant loss or damage.

A. Clear Legal Right.
Southeast had the burden of making a prima facie showing that it had a clear legal right to recovery based on the merits of its claim that the Finkelsteins had violated the Florida RICO Act or Anti-Fencing Act.[1] The evidence which furnished the basis for issuance of the injunction consisted of the following: Margaret Finkelstein visited the office of Thompson & Meyers, one of the corporations involved in the scheme, other alleged participants in the scheme handled money in her presence, she received a weekly paycheck for services which she did not perform and she received other checks which named her and Paul Finkelstein as payees. The record does not show that she deposited any of the monies received from these checks into the family trust. However, the record does demonstrate that on March 8, 1984, she initially funded the trust with $160,000 cash derived from a mortgage on property titled solely in her name, which was not acquired with proceeds allegedly from RICO or theft activities, and that on April 19, 1984 she deposited an additional $90,000 cash into the trust. She testified that $58,335.62 of the $90,000 came from the sale of stock and that the balance came from a safety deposit box and represented additional proceeds from the sale of her stock.
On this evidence, the trial court concluded that at least some of the monies placed in the trust (the difference between $58,335.62 and $90,000) represented cash proceeds from the gem sales operation. The trial court concluded that since Margaret presented no documentary evidence to contest the claim by Southeast, that at least the approximate $31,000 deficiency represented the profits of racketeering. This conclusion is not supported by the record, since Margaret did testify as to the source of the $31,000 and Southeast did not present any evidence to the contrary.
Southeast also had the burden to show at least two incidents of racketeering conduct with similar methods, accomplices, etc. Section 895.02(4) provides:
"Pattern of racketeering activity" means engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after the effective date of this act and that the last of such incidences occurred within five years after a prior incident of racketeering conduct.
We do not find evidence in the record, particularly with respect to the actions attributed to Margaret Finkelstein, to satisfy the requirements of Section 895.02(4), for finding a "pattern of racketeering activity," nor do we find evidence which would support the trial court's finding that the Finkelstein family trust constituted an enterprise within the meaning of the statute. Section 895.02(3) provides:
"Enterprise" means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises *982 and governmental, as well as other, entities.
The complaint contains no allegation that the beneficiaries of the trust, Jill and Diane Finkelstein, participated or acted in violation of either the Florida RICO Act or the Anti-Fencing Act. Southeast joined them only because they had an interest in the family trust. The record does not contain any showing that the trust constituted an enterprise engaged in a pattern of racketeering activity, and therefore we must conclude that it did not constitute such an enterprise within the meaning of Florida RICO. We also conclude that the trust did not constitute an enterprise as similarly defined in the Florida Anti-Fencing Act, section 812.012(8). This Act contains substantially the same definition of "enterprise" as that found in RICO.
Next, we focus on the requisite element of illegal taking or conversion of the property of another in the context of the Anti-Fencing Act.
(1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit therefrom.
(b) Appropriate the property to his own use or to the use of any person not entitled thereto.
§ 812.014, Fla. Stat. (1983).
Southeast offered no evidence other than that which we have already reviewed to support an injunction under the Anti-Fencing Act. The evidence presented is inadequate to sustain the trial court's finding that Southeast has a clear legal right to recovery based on allegations that Margaret Finkelstein violated this Act. Also, it is equally apparent that the other appellants, Jill and Diane Finkelstein, are no more subject to claims that they violated this statute than they were to claims based upon Florida RICO. Thus, Southeast clearly failed to make a prima facie showing of a clear legal right to recovery on the merits in its claims against appellants under either statute.

B. Immediate danger of significant loss.
The trial court found:
[b]y placing $90,000 into the investment account on the day that the suit was filed, transforming real estate equity into cash and depositing the cash into a loosely structured "trust," and processing or "laundering" the boiler room receipts of Lawrence Austin, Paul and Margaret Finkelstein have demonstrated a proclivity to dispose of assets in a manner which, if left unrestrained, would frustrate all efforts to obtain relief should the plaintiff prevail on the merits.
We find no evidentiary support for the trial court's conclusion that the creation of an irrevocable trust with funds traceable to a stock sale and a mortgage shows an intent to dispose of or hide assets. We held in St. Lawrence Company, N.V. v. Alkow Realty, Inc., supra, that the danger that a defendant might divest assets to render a money judgment uncollectible is not sufficient to support an injunction against divestiture. The injunction entered here appears strikingly similar to a prejudgment writ of garnishment without the requisite showing to support the issuance of such a writ, such as the reasonable belief that, after execution is issued, a debtor will not have in his possession sufficient property upon which a levy can be made to satisfy a creditor's claim.

C. Public Interest.
The trial court found that "the public interest would not be disserved if the court enjoined the Finkelsteins in a manner which preserved the court's ability to enforce the public policies represented by the civil remedies of the anti-theft and RICO Acts." Since we have concluded that Southeast has failed to demonstrate that the Finkelstein family trust constituted an enterprise within the meaning of the two statutes, it follows that the temporary injunction *983 would not serve the public interest.

D. Inadequate Remedy at Law.
The final requisite for temporary injunctive relief is the inadequacy of an adequate remedy at law. From our review of the order granting temporary injunction, it appears that the trial court omitted this consideration in its determinations altogether. Nonetheless, our review of the evidence outlined above suggests that Southeast failed to make a prima facie showing on this point as well. The establishment of a family trust in the circumstances presented does not show that appellants have dissipated all of their assets available for collection should Southeast prevail on its claims. Thus, Southeast has not shown how it is without adequate remedy at law.

CONSTRUCTIVE TRUST.
Finally, appellee cites ITT Community Development Corporation, Inc. v. Barton, 457 F. Supp. 224 (M.D.Fla. 1978), to support its argument that, in addition to the Anti-Fencing Act and Florida RICO Act, the trial court properly granted the injunction based on its request for a constructive trust. In Barton, an employee received improper payments from contractors doing business with his employer. He deposited all of the monies wrongfully received into a separate bank account. The district court concluded that injunction was proper, after reviewing the evidence that
[t]he Florida Supreme Court has also stated that equity will raise a constructive trust and compel restoration where one, through actual fraud, abuse of confidence, reposed or accepted, or through other questionable means, gains something for himself which in equity and good conscience he should not be permitted to hold.
Id. at 230.
The court granted a temporary injunction restraining the defendant from dissipating the assets wrongfully obtained, but refused to restrain other funds not directly traceable to the defendant's wrongful conduct. In so doing, the court found a likelihood that plaintiff would prevail, that defendant's funds would be dissipated before the conclusion of this case without injunctive relief, and in that event, plaintiff's legal remedies would prove inadequate since there would be no res upon which the court could impose a constructive trust.
Before a court may fasten a constructive trust on a defendant's property, it must find particular property upon which attachment by trust can fairly be obtained. This specific property must be the subject of an inequitable transaction. Mere breach of contract or other wrongdoing does not entitle a plaintiff to a constructive trust on a defendant's general assets to be used to satisfy a plaintiff's claim. Indeed, it is well settled that Florida courts will impress property with a constructive trust only if the trust res is specific, identifiable property or if it can be clearly traced in assets of the defendant which are claimed by the party seeking such relief. Landers v. Sherwin, 261 So.2d 542 (Fla. 4th DCA 1972).
Other jurisdictions have reached the same conclusion. In Wheeler v. Blacklands Production Credit, 627 S.W.2d 846 (Tex. App. 1982), a plaintiff sought to impose a constructive trust on property allegedly fraudulently conveyed to the defendant, as well as all of defendant's property. The trial court imposed a constructive trust on all of defendant's assets. In reversing, the Texas court found the ruling too broad and reformed the judgment by limiting it to the property fraudulently taken or conveyed.
The very nature of a constructive trust presupposes a wrongful taking by B of property owned equitably or legally by A, or to which A has some claim of right. In such a situation, the law imposes a constructive trust on that property and any proceeds from the sale thereof, or revenues therefrom, for the benefit of A. There must of necessity be specific property, the subject of the inequitable transaction, before a constructive trust may be imposed. Definitive, designated property, *984 wrongfully withheld from another, is the very heart and soul of the constructive trust theory.
The principle is stated in Restatement of the Law Restitution sec. 160(i) on p. 648: "Necessity of trust property. A constructive trust does not arise unless there is property on which the constructive trust can be fastened, and such property is held by the person to be charged as constructive trustee. Thus, although a constructive trust arises where a transfer of title to land or a chattel or a chose in action is obtained by fraud, yet where by fraud a person is induced to render services, no constructive trust arises, even though the person rendering the services is entitled to recover the value of his services ..." All of the cases and the authorities on the subject, speak of a constructive trust only with respect to specific property which has been wrongfully taken from another who is equitably entitled to it.
In Bogert, Trust and Trustees, 2d ed revised, sec. 471, p. 9, the following statement is made: "In order to obtain a constructive trust the plaintiff must identify specific property as the res of the trust to which he is entitled. Mere breach of contract does not entitle the complainant to a constructive trust, nor does proof that defendant has been guilty of some wrongdoing and has assets that could be used to satisfy the complainants' claim."
Id. at 851.
Applying these authorities to the facts herein, in conjunction with the requirements for temporary injunctive relief, it is clear that Southeast failed to establish a prima facie case under the theory of constructive trust.
In summary, we hold that a private plaintiff in a civil action brought pursuant to the Florida RICO Act or Anti-Fencing Act may be entitled to temporary or preliminary injunctive relief barring a defendant from disposing of assets in a private trust fund. However, before an injunction may issue as to all or part of a trust, it must be shown: that a clear legal right exists based on claims that the defendant who created, deposited funds into, or had an interest in the trust funds engaged in activities prohibited by either the Florida RICO Act or the Anti-Fencing Act; that all or part of the fund proceeds which are sought to be frozen were derived as the result of these prohibited activities; that an immediate danger of significant loss exists if the injunction is not granted; that plaintiff has an inadequate remedy at law; and that issuance of the injunction is in the public interest. At this point, we would emphasize that the injunction entered would be limited to the proceeds actually obtained from the prohibited activities. We also hold that a sufficient bond must be posted by the parties seeking the injunction to protect the enjoined parties from loss or damage directly related to the issuance of the injunction. The evidence contained in this record does not establish the elements necessary to support the issuance of an injunction under the Florida RICO Act, the Anti-Fencing Act or under constructive trust principles, for reasons already discussed. Therefore, we reverse the order granting the temporary injunction and remand this cause for further proceedings.[2]
REVERSED AND REMANDED.
ANSTEAD and GUNTHER, JJ., concur.
NOTES
[1] The trial court applied a different standard on this point, requiring the finding of a substantial likelihood of success on the merits. This standard appears to be uniformly applied by the federal courts in temporary injunction requests, including courts in federal RICO cases. See, e.g., United States v. Mandel, 408 F. Supp. 679 (E.D.Md. 1976). However, since Southeast's motion for injunctive relief was based on Florida common law, we prefer to apply the standard which calls for determination of clear legal right.
[2] Appellants, in reply brief, challenge the amount of the bond posted by appellee Southeast after ex parte hearing. The bond equalled ten percent of the value of the assets frozen by injunction. Given our ruling on the impropriety of the injunction, it is not necessary for us to address this point.