**HUDSON NATIONAL BANK, Plaintiff,**

**v.**

**Irwin SHAPIRO a/k/a "Chuck" Shapiro; Hotel Marketing Association, Inc.; Club Victoria, Inc.; Delco Tours, Inc. Theodore Berounsky a/k/a "Ted" Berounsky; and World Travel Concepts, Inc., Defendants.**

**No. 88–1530–CIV.**

United States District Court, S.D. Florida, Miami Division.

Sept. 14, 1988.

Nunc Pro Tunc Sept. 7, 1988.

Tom Farrar, Holland & Knight, Miami, Fla., for plaintiff.

John Freud, Berounsky & World, Miami, Fla., for Berounsky & World Travel.

William Weisman, Ft. Laud., Fla., Marc Nurik, Miami, Fla., for Shapiro & Victoria, Inc.

## MEMORANDUM OPINION

SPELLMAN, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW [1]

This diversity action was before the Court on Plaintiff's Motion for Preliminary Injunction. An evidentiary hearing was held on August 23, 1988, and September 6, and 7, 1988. The Plaintiff, HUDSON NATIONAL BANK ("BANK"), was seeking a preliminary injunction against three different bank accounts: Florida National Bank accounts # 520113430872 and # 520113430839, held under the name of Victoria Marketing Concepts; and NCNB National Bank of Florida account # 3600683535, held under the name of World Marketing Concepts. This Court entered temporary restraining order against those accounts on August 17, 1988, with a ten day extension granted on August 23, 1988.

The Plaintiff, HUDSON NATIONAL BANK ("BANK"), claims that it has been the victim of a fraudulent credit card scheme perpetrated by the Defendants in this action, in conjunction with two Massachusetts corporations, Treasure House Enterprises, Inc. ("TREASURE HOUSE"), and Dynasty Enterprises, Inc. ("DYNASTY"). The Massachusetts corporations, along with their principle officers, June A. Allyn ("JUNE") and Jon Z. Allyn ("JON"), are the subject of another action pending in Massachusetts. The Plaintiff is bringing the action in this Court to recover certain proceeds of the fraudulent scheme allegedly held in the Defendants' bank accounts and sought a preliminary injunction to

---

**1.** This Court entered its Order for Preliminary Injunction on September 7, 1988. *See* Appendix A. The Court in that Order specifically retained the right to file this subsequent Findings of Fact and Conclusions of Law, *nunc pro tunc* to September 7, 1988.

freeze the funds in those accounts. A Temporary Restraining Order against those accounts was granted on August 17, 1988, and at a hearing held on August 23, 1988, was extended until September 7, 1988.

## I. FINDINGS OF FACT

1. The Court has subject matter jurisdiction through diversity of the parties over this matter. The Plaintiff BANK is a national banking association with its principal place of business in Hudson, Massachusetts. BANK is a citizen of Massachusetts under 28 U.S.C. section 1348. The Defendants are persons or entities who are citizens of and doing business in Florida. The amount in controversy exceeds the sum of $10,000, and is between citizens of different states. This Court therefore has original jurisdiction under 28 U.S.C. section 1332.

2. Defendants Irwin Shapiro ("SHAPIRO"), Hotel Marketing Association, Inc. ("HOTEL"), Club Victoria, Inc. ("CLUB") and Delco Tours, Inc. ("DELCO") are or have been doing business under fictitious names, including "Victoria Marketing Concepts" and "Hotel Marketing Association," and will be referred to collectively as "VICTORIA." VICTORIA is in the business of selling tours and travel packages to the Bahamas. The sales are made through telephone solicitations and secured by a $100 deposit, usually using the customer's credit card.

3. Defendants Theodore Berounsky ("BEROUNSKY") and World Travel Concepts, Inc. ("WORLD") are or have been doing business under the fictitious name "World Marketing Concepts" and collectively will be referred to as "WORLD." WORLD is in the business of selling memberships to a discount buying club. As an incentive to join the club, WORLD offers a free vacation to various locations.

4. The Court has personal jurisdiction over each of the Defendants in this matter. Each of the Defendants has either been personally served or has appeared in order to contest this Motion for Preliminary Injunction. The Court's personal jurisdiction over the Defendants that have not yet been personally served extends only to the issue of this preliminary injunction, and is without prejudice to any other pending motions filed by those Defendants.

5. TREASURE HOUSE and DYNASTY are Massachusetts corporations organized on January 15, 1988. On or about January 13, 1988, two days before JON and JUNE incorporated TREASURE HOUSE and DYNASTY, JUNE contacted the BANK and requested that the BANK open MasterCard and Visa merchant accounts in the names of TREASURE HOUSE and DYNASTY. JUNE represented to the BANK that TREASURE HOUSE and DYNASTY were in the mail-order wholesale jewelry business and that they had been in business for twenty years. These representations were false. Acting in reliance upon these misrepresentations, the BANK entered into MasterCard and Visa Card Merchant Agreements with TREASURE HOUSE and DYNASTY.

6. WORLD and VICTORIA orally contracted with TREASURE HOUSE and DYNASTY to "factor" credit card sales secured by the sales operations of WORLD and VICTORIA. These oral agreements violated the merchant agreement between BANK, and TREASURE HOUSE and DYNASTY. No connection between WORLD and VICTORIA was alleged or established.

7. WORLD and VICTORIA, each operating through a telephone solicitation program, would secure sales to be charged to the customer's MasterCard or Visa. They would then fax a copy of those charges to TREASURE HOUSE and/or DYNASTY. TREASURE HOUSE and DYNASTY would present the charges to the BANK. The BANK then entered the charges into a central processing system, so that the customer's MasterCard or Visa accounts were debited by the Cardholders' banks. The BANK would credit the account of TREASURE HOUSE or DYNASTY for the amount of the charges. These credits to the accounts of TREASURE HOUSE and DYNASTY were the equivalent of cash deposits and could be withdrawn immediately.

8. TREASURE HOUSE and DYNASTY withdrew some of the funds credited by the BANK to their accounts and transferred those funds to WORLD and VICTORIA. Those funds have been traced to the above mentioned bank accounts held by VICTORIA and WORLD.

9. After the credit card charges had been processed, many of the cardholders rejected and rescinded their purchases and sought credits for their purchases. The cardholders rejected their purchases for a number of reasons, including allegations that they had never authorized the credit card charge, that they had never heard of TREASURE HOUSE or DYNASTY, and that they had not received what they had been promised. Many of the cardholders requested reimbursement or credits from WORLD, VICTORIA, TREASURE HOUSE and DYNASTY directly. These requests for reimbursements have frequently not been honored by VICTORIA. There was insufficient evidence to establish whether any refunds requested from WORLD had not been processed.

10. Representatives from the Better Business Bureau of Miami and the Attorney General's Office of Legal Affairs, Consumer Protection and Fair Trade Practices Unit, both testified that they had dealt extensively with VICTORIA regarding consumer complaints. There were voluminous records establishing a history of problems, mostly concerning refunds and breach of promise, between VICTORIA and public consumers. There were numerous complaints and allegations that VICTORIA was operating a travel credit card scam. The Attorney General's office in the past investigated deceptive and unfair trade practices by VICTORIA, and is currently undertaking another investigation. As a result of the past investigations, the State of Florida, through the Attorney General's office, has entered into at least three written agreements in which VICTORIA has given assurance of voluntary compliance with the law, including the consumer protection laws of the State of Florida and of the United States Federal Trade Commission.

11. Many cardholders, either because they were unable to obtain refunds or because they did not wish to try to obtain refunds directly from VICTORIA or WORLD, requested that their MasterCard or Visa account issuing banks credit their charge accounts for the amount of the contested charges made by TREASURE HOUSE and DYNASTY on behalf of WORLD or VICTORIA. The cardholders' banks credited those cardholders' accounts and electronically notified the BANK through the central processing system of the credits. The BANK then issued a credit to the cardholders' banks and debited the account of TREASURE HOUSE or DYNASTY. This type of procedure is known as a "chargeback."

12. On or about July 18, 1988, the BANK discovered an extraordinarily large number of chargebacks to the MasterCard and Visa merchant accounts of TREASURE HOUSE and DYNASTY. Thereafter, on or about July 20, 1988, the BANK terminated the merchant agreements with TREASURE HOUSE and DYNASTY. The BANK is continuing to receive chargebacks on those accounts, at the rate of approximately $5,000 per business day. The BANK expects the chargebacks to continue for the next several months. TREASURE HOUSE and DYNASTY have transferred funds to the Defendants and so depleted their accounts that insufficient funds remain therein to pay off the chargebacks which the BANK will receive, estimated to exceed $1,600,000.

13. Evidence was presented to show that VICTORIA often uses factoring agents in different states to process its credit card sales. Further, VICTORIA uses various fictitious names and frequently changes both name and bank accounts. VICTORIA was aware of the numerous refunds and chargebacks attributable to its operation and has not satisfied large numbers of such complaints. The evidence also showed that this is a usual pattern of activity by this boiler room operation and is most likely done in an attempt to defraud the BANK and the consuming public. Funds have been traced from the accounts of TREASURE HOUSE and DYNASTY to

the accounts held by VICTORIA under the name of Victoria Marketing Concepts. There is a substantial likelihood that there was an illegal and intentional taking of these funds by VICTORIA through the agency of TREASURE HOUSE and DYNASTY, with an intent to deprive the BANK of these funds. VICTORIA knew of the continuing chargebacks and depleted the merchant accounts so that the funds to pay for the chargebacks would not be available. The evidence showed that this type of behavior is VICTORIA's usual pattern of activity.

14. The past practice of VICTORIA in utilizing different factoring agents, different fictitious names, and different bank accounts present a very immediate danger of dissipation of the funds if their bank accounts are not enjoined. Additionally, the evidence from both the Better Business Bureau and the Attorney General's office indicates that VICTORIA is perpetrating a fraud upon the consuming public through use of a travel scam.

15. There was no evidence that WORLD is similarly involved in any wrongdoing. The evidence presented established that WORLD has been in business two years and used TREASURE HOUSE and DYNASTY as factoring agents from approximately January 11, 1988 until May 31, 1988. WORLD was unaware that the representations made by JUNE to the BANK concerning TREASURE HOUSE and DYNASTY were untrue and, in fact, JUNE made the same misrepresentations to WORLD. WORLD was unaware that the factoring agreement it made with TREASURE HOUSE and DYNASTY was contrary to the merchant agreement those entities had with the BANK. The BANK never contacted WORLD about any problems or complaints until the filing of this action. There was insufficient evidence to show whether any of the chargebacks resulting from WORLD's sales are still pending or remain uncredited.

16. The Better Business Bureau indicated that they had received twenty-eight (28) complaints regarding WORLD over the past two years. There was no evidence that any of those complaints, or any others, remain unsatisfied. WORLD presently has approximately 10,000 active customers. The Assistant Attorney General's testimony did not relate to any activities by or concerning WORLD. The BANK's Amended Complaint contained eight (8) consumer complaint letters regarding WORLD, but there is no evidence that any of those complaints are presently unresolved.

## II. CONCLUSIONS OF LAW

The grant or denial of a preliminary injunction rests in the discretion of the trial court. *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940). The remedy of a preliminary injunction is one that is extraordinary and should not be granted unless the movant has carried the burden of persuasion by a clear showing. *Clairol, Inc. v. Gillette Co.*, 389 F.2d 264 (2d Cir.1968), *Dania Jai–Alai International, Inc. v. Murua*, 375 So.2d 57 (Fla. 4th DCA 1979). This diversity action requires this Court to apply Florida law in establishing whether or not the movant has established this burden. *Guaranty Trust Company of New York v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

Florida law requires that a party seeking an injunction must show: 1) irreparable harm; 2) a clear legal right; 3) an inadequate remedy at law; and 4) consideration of the public interest. *Finkelstein v. Southeast Bank*, 490 So.2d 976, 980 (Fla. 4th DCA 1986). The Florida RICO statute, however, has replaced the necessity for showing irreparable harm with the requirement for showing immediate danger of significant loss or damage. Therefore, the four requirements that must be met in order for this Court to issue a preliminary injunction under the Florida Racketeer Influenced Corrupt Organization Act, Chapter 895, Florida Statutes (1983) are: 1) that the Plaintiff has a clear legal right to the property; 2) that there is an immediate danger of significant loss or damage; 3) that the preliminary injunction is in the public interest; and 4) that there is an inadequate remedy at law. *Finkelstein* at

981. These requirements have been met in regards to the Defendants, IRWIN SHAPIRO, HOTEL MARKETING ASSOCIATION, INC., AND CLUB VICTORIA, INC., but not in regards to the Defendants, DELCO TOURS, THEODORE BEROUNSKY and WORLD TRAVEL CONCEPTS, INC.

■ First, Plaintiff has established a clear legal right. In order to establish this element, it is sufficient to show Plaintiff's likelihood of success on the merits. *United States v. Mandel*, 408 F.Supp. 679 (E.D. Md.1976) The court in *Finkelstein* rejected this standard, preferring to apply the Florida common law which calls for determination of a clear legal right. *Finkelstein* at 981, n. 1. This Court does not find it necessary to distinguish the two requirements because under either, the Plaintiff has met its burden. Here, Plaintiff has traced the funds from the TREASURE HOUSE and DYNASTY bank accounts to the accounts held by the Defendants under the name of Victoria Marketing Concepts. Plaintiff produced sufficient evidence to establish a prima facie case of civil theft by establishing a likelihood that there was an illegal taking of the funds from the BANK with an intent to deprive the BANK of those funds, or to appropriate those funds to VICTORIA's own use. The evidence also showed a likelihood that VICTORIA engaged in this type of illegal activity in such a manner as to establish a pattern of racketeering. Under Florida law, to establish a pattern of racketeering, the movant must establish that the defendants comprise an enterprise that have engaged in at least two incidents of racketeering conduct with similar methods, intents, results, accomplices, victims, etc. *Finkelstein* at 981. Here, this evidence was established through testimony regarding VICTORIA's past and present practice of using several different factors to process their sales, with the knowledge that there were large numbers of both chargebacks and unsatisfied refunds, and that there were often insufficient funds to cover the chargebacks. The Vice–President of Marketing for VICTORIA testified that VICTORIA was presently involved in a number of other lawsuits all involving the use of factoring agents, and those factors's merchant accounts' inability to cover pending chargebacks. Under these circumstances, this is sufficient to establish a pattern of racketeering. Additionally, it is clear that VICTORIA is an enterprise within the meaning of the RICO statute. Therefore, thorugh the above evidence, Plaintiff did establish a clear legal right to recovery under the civil theft statute, 812.035(6), Florida Statutes, as well as the Florida RICO statute, Florida Statutes, 895.05(6).

■ Second, Plaintiff must show an immediate danger of significant loss or damage. Here, Plaintiff proved that there was a likelihood that the funds would be dissipated if the accounts were not enjoined. Defendants have been engaging in this type of activity for some time and the evidence shows that it is their usual practice to change names and bank accounts very rapidly and often. Given the nature of the Defendants' boiler room operations, and their past practices, the likelihood that the funds would be dissipated is great. This is not to say that this injunction is simply an attempt to secure a future money judgment. Rather, the evidence shows that there is a great likelihood that these Defendants will attempt to dispose of or hide the identified and traced funds, which rightfully belong to the BANK.

■ Third, the injunction must be in the public interest. There was more than enough evidence to support this element in this case. Employees of both the Better Business Bureau and the Consumer Department of the Florida Attorney General's office testified that their offices were very concerned with the practices of VICTORIA. Both witnesses testified to numerous consumer complaints received by their offices regarding these entities. Additionally, the witness from the Attorney General's office testified as an expert regarding travel scams or frauds. The evidence presented by the BANK supports the contention that VICTORIA is perpetuating a fraud upon the public. Additionally, where there is a statute prohibiting the activity at issue, as

in this case, that statute is considered a strong factor in favor of a preliminary injunction. *Vanadium Corp. of America v. Susquehanna Corp.*, 203 F.Supp. 686 (D.C. Del.1962).

■ The fourth and final factor is that there must be an inadequate remedy at law. Here, the funds traced to the accounts of VICTORIA are funds that were fraudulently obtained. VICTORIA's activities are based on their ability to change bank accounts and factoring agents. The preliminary injunction will prevent the vicious circle wherein funds are continually transferred from one account to another. Additionally, the funds are claimed by the BANK as its own property under a theory of constructive trust. Florida has recognized such a trust where the monies in a bank account were wrongfully obtained and where such funds can be traced to that particular account. *ITT Community Development Corporation v. Barton*, 457 F.Supp. 224 (M.D.Fla.1978). The BANK in this case has traced the funds wrongfully obtained from it to the bank accounts held by the VICTORIA. This Court considers those funds to be the *res* of a constructive trust. If the accounts are not enjoined, the funds will most likely be dissipated, the BANK will be unable to regain its *res,* and the fraud on the BANK, and the public, will continue. For these reasons, the Preliminary Injunction is proper against the Defendants IRWIN SHAPIRO, HOTEL MARKETING ASSOCIATION, INC., AND CLUB VICTORIA, INC.

■ The Preliminary Injunction is DENIED as to the NCNB National Bank of Florida account # 3600683535, under the name of World Marketing Concepts. The BANK was unable to prove a clear legal right to the funds. There was no evidence that Defendants THEODORE BEROUNSKY and WORLD TRAVEL CONCEPTS, INC. engaged in any illegal taking of the funds, or were involved in a pattern of criminal activity. The only evidence present showed that WORLD used TREASURE HOUSE and DYNASTY as factoring agents in violation of the Visa and Master Card agreements those entities had with the BANK. That is insufficient to show that there was any fraud on the part of WORLD, or that WORLD knew or should have known of the fraudulent activities of TREASURE HOUSE and DYNASTY. Additionally, there was no evidence that WORLD controlled the activities of TREASURE HOUSE and DYNASTY in such a way as to impute any of TREASURE HOUSE's and DYNASTY's fraudulent actions to WORLD. There was no evidence showing that WORLD was engaging in a fraud or scam against the public, or that WORLD will dissipate the funds in its account. While the Plaintiff may be out funds caused by future chargebacks, it has failed to establish either that it has a clear legal right, or that it has no adequate legal remedy.

## APPENDIX A

### ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion for Preliminary Injunction. Upon careful review of the record, the motions filed therein, and the hearing held on this matter on August 23, 1988, and September 6, and 7, 1988, it is hereby

ORDERED AND ADJUDGED that the Preliminary Injunction is GRANTED as to the Florida National Bank accounts # 520113400872 and # 787178750, under the name of Victoria Marketing Concepts. In order for this Court to issue a preliminary injunction in cases alleging violations under the Florida Anti–Fencing Act, Chapter 812, Florida Statutes (1983) and the Florida Racketeer Influenced Corrupt Organization Act, Chapter 895, Florida Statutes (1983), four requirements must be met: 1) that Plaintiff has a clear legal right to the property; 2) that there is an immediate danger of significant loss; 3) that the preliminary injunction will be in the public interest; and 4) that Plaintiff has an inadequate remedy at law. *Finkelstein v. Southeast Bank*, 490 So.2d 976 (Fla. 4th DCA 1986). These requirements have been met in regards to the Defendants, IRWIN SHAPIRO, HOTEL MARKETING ASSO-

CIATION, INC., AND CLUB VICTORIA, INC.

First, Plaintiff has established a clear legal right. In order to establish this element, it is sufficient to show Plaintiff's likelihood of success on the merits. Here, Plaintiff has traced the funds from the Treasure House and Dynasty bank accounts to the accounts held by these Defendants under the name of Victoria Marketing Concepts. Plaintiff has produced sufficient evidence to establish a prima facie case of civil theft by establishing a likelihood that there was an illegal taking of the funds from Hudson National Bank with an intent to deprive Plaintiff of those funds, or to appropriate those funds to Defendants' own use. The evidence also showed a likelihood that Defendants engaged in this type of illegal activity in such a manner as to establish a pattern of racketeering. Therefore, Plaintiff did establish a clear legal right to recovery under the civil theft statute, 812.035(6), Florida Statutes, as well as the Florida RICO statute, Florida Statutes, 395.05(6).

Second, Plaintiff must show an immediate danger of significant loss. Here, Plaintiff proved that there was a likelihood that the funds would be dissipated if the accounts were not enjoined. Defendants have been engaging in this type of activity for some time and the evidence shows that it is a usual practice of these Defendants to change names and bank accounts very rapidly and often. Given the nature of the Defendants' operations, and their past practices, the likelihood that the funds would be dissipated is great.

Third, the injunction must be in the public interest. Here, there was more than enough evidence to support this element. Employees of both the Better Business Bureau and the Consumer Department of the Florida Attorney General's office testified that their offices were very concerned with the practices. Both witnesses testified to numerous complaints received by their offices regarding these entities. Additionally, the witness from the Attorney General's office testified as an expert regarding travel scams or frauds. The evidence presented by the Plaintiff supports the contention that these Defendants are perpetuating a fraud upon the public. Additionally, where there is a statute prohibiting the activity at issue, as in this case, that statute is considered a strong factor in favor of a preliminary injunction. *Vanadium Corp. of America v. Susquehanna Corp.*, 203 F.Supp. 686 (D.C.Del.1962).

The fourth and final factor is that there must be an inadequate remedy at law. Here, the funds traced to the accounts of these Defendants are funds that were fraudulently obtained. Defendants' activities are based on their ability to change bank accounts and factoring agents. The preliminary injunction will prevent the vicious circle wherein funds are continually transferred from one account to another. Additionally, the funds are claimed by Plaintiff as its own property under a theory of constructive trust. Florida has recognized such a trust where the monies in a bank account were wrongfully obtained and where such funds can be traced to that particular account. *ITT Community Development Corporation v. Barton*, 457 F.Supp. 224 (M.D.Fla.1978). Plaintiff in this case has traced the funds wrongfully obtained from it to the bank accounts held by the Defendants. This Court considers those funds to be the *res* of a constructive trust. If the accounts are not enjoined, the funds will most likely be dissipated, the Plaintiff will be unable to regain its *res*, and the fraud on the Plaintiff, and the public, will continue. For these reasons, the Preliminary Injunction is proper against the Defendants IRWIN SHAPIRO, HOTEL MARKETING ASSOCIATION, INC., AND CLUB VICTORIA, INC.

The Preliminary Injunction is DENIED as to the NCNB National Bank of Florida account # 3600683535, under the name of World Marketing Concepts. The Plaintiff was unable to prove a clear legal right to the funds. There was no evidence that Defendants THEODORE BEROUNSKY and WORLD TRAVEL CONCEPTS, INC. engaged in any illegal taking of the funds, or were involved in a pattern of criminal activity. The only evidence present showed that World Travel Concepts used Treasure House and Dynasty as factoring agents in violation of the Visa and Master Card agreements those entities had with

the Plaintiff. That is insufficient to show that there was any fraud on the part of World Travel Concepts, or that World Travel Concepts knew or should have known of the fraudulent activities of Treasure House and Dynasty. Additionally, there was no evidence that World Travel Concepts controlled the activities of Treasure House and Dynasty in such a way as to impute any of Treasure House's and Dynasty's fraudulent actiona to World Travel Concepts. There was no evidence showing that World Travel Concepts was engaging in some kind of fraud or scam against the public, or that World Travel Concepts will dissipate the funds in its account. While the Plaintiff may be out funds caused by future chargebacks, it has failed to establish either that it has a clear legal right, or that it has no adequate legal remedy.

This Court's more detailed findings of facts and conclusions of law concerning this matter will be forthcoming. The bond required under the Temporary Restraining Order will remain in effect to secure the Preliminary Injunction and as surety for any damages recoverable by World Travel Concepts, Inc..

DONE AND ORDERED in Chambers at Miami, Florida this 7 day of September, 1988.*

---

* This Order has been signed with the specific finding that this Court has jurisdiction over the parties and the subject matter for which relief has been granted.