541 So.2d 1324 (1989)
BANCO INDUSTRIAL de VENEZUELA, C.A., a Venezuelan Banking Institution, Appellant,
v.
Jose Gonzalo MEDEROS SUAREZ, a/K/a Jose Mederos and Diana Barron Mederos, a/K/a Diana Mederos, Appellees.
No. 87-3031.
District Court of Appeal of Florida, Third District.
April 18, 1989.
*1325 Richey & Munroe, P.A., and Alan S. Fine and William Richey, Miami, for appellant.
Michael Zelman, Miami, for appellees.
Before BASKIN and JORGENSON, JJ., and WARREN H. COBB, Associate Judge.
JORGENSON, Judge.
Banco Industrial de Venezuela, C.A. (BIV), appeals from an order of the trial court which granted the motion of Jose and Diana Mederos to dissolve a temporary injunction. For the following reasons, we reverse the trial court's order.
BIV filed a four-count verified complaint against the Mederoses and other defendants not parties to this appeal. The bank alleged common law fraud, conspiracy, debt, and criminal enterprise in violation of section 895.03(3) of the Florida Racketeer Influenced and Corrupt Organizations (RICO) Act.[1] In its complaint, BIV detailed the mechanics of an extensive and sophisticated scheme to take corrupt advantage of an import assistance program established by the Venezuelan government. As part of the scheme, the Mederoses and other defendants allegedly forged bills of lading, presented them to BIV for payment and, by manipulating the program's preferential rate of exchange, stole from BIV an amount in excess of $2.3 million.[2]
BIV filed a motion for a temporary injunction enjoining the defendants from disposing of "any assets, whatever their present form, representing, in whole or in part, funds derived from payments" by BIV. The motion was granted. The trial court also granted BIV's ore tenus motion to amend its complaint to add a count for the imposition of a constructive trust. The Mederoses filed a motion for dissolution or modification of the temporary injunction. After a hearing, the trial court determined that it could not issue a temporary injunction or impose a constructive trust in light of BIV's inability, prior to any discovery, to identify specifically or to trace the stolen funds to assets held by the Mederoses. The trial court entered an order granting the motion to dissolve the injunction and denying BIV's ore tenus motion to impose an immediate constructive trust.
In so ruling, the trial court correctly relied upon Finkelstein v. Southeast *1326 Bank, N.A., 490 So.2d 976 (Fla. 4th DCA 1986), which was the first judicial treatment of section 895.05(6), Florida Statutes (1985). With due deference to our sister court, however, in our view insufficient weight was given to the substantial differences between the federal and Florida RICO statutes.[3] Unlike its federal counterpart, the Florida RICO statute contains an express provision for private injunctive relief. Section 895.05(6) permits
[an] aggrieved person [to] institute a proceeding under subsection (1). In such proceeding, relief shall be granted in conformity with the principles that govern the granting of injunctive relief from threatened loss or damage in other civil cases, except that no showing of special or irreparable damage to the person shall have to be made. Upon the execution of proper bond against damages for an injunction improvidently granted and a showing of immediate danger of significant loss or damage, a temporary restraining order and a preliminary injunction may be issued in any such action before a final determination on the merits.
Section 895.05(1) provides, in relevant part:
Any circuit court may, after making due provision for the rights of innocent persons, enjoin violations of the provisions of s. 895.03 by issuing appropriate orders and judgments... .
In Finkelstein, the court construed section 895.05(6) as requiring the party seeking a preliminary injunction to meet the common law requirements for injunctive relief. Finkelstein, 490 So.2d at 980. We construe the adverbial phrase "[i]n such proceeding," found in section 895.05(6), as referring to the permanent injunctive proceedings treated in section 895.05(1). In determining whether to grant permanent injunctive relief, therefore, we agree with the Finkelstein court that common law principles remain applicable, except for a showing of "irreparable damage" which the statute obviates. As we read the plain language of the balance of section 895.05(6), the only requirements for a preliminary injunction under the Florida RICO Act, upon the filing of a verified complaint, are (1) posting a sufficient bond against damages, and (2) showing an "immediate danger of significant loss or damage." Where a plaintiff under the Florida RICO Act has filed a verified complaint, furnished a sufficient bond, and made the requisite showing, the statutory criteria for a preliminary injunction are satisfied.
Our construction is supported not only by the plain language of the statute, but also by the enabling clauses of the Act, which contain clear legislative findings that the national scope of organized crime is highly sophisticated and diverse and that the same patterns of unlawful conduct exist in Florida, making it "necessary to provide new criminal and civil remedies and procedures... ." RICO Act, ch. 77-334, 1977 Fla. Laws 1399 (emphasis supplied). It is highly unlikely that the Florida legislature drafted and passed the RICO Act with nothing more in mind than merely codifying the common law regarding preliminary injunctions. We think the point is well taken that
[it] would have been eminently reasonable for the legislature, in view of the type of wrongdoer the RICO statute is meant to punish, to have relaxed the common law requirements for temporary injunctions so that the plaintiff, at the close of the lawsuit, would be able to seize some of the moneys he was deprived of by fraud or theft. In sum, the primary mischief the statute addresses is the likelihood that a party charged with *1327 RICO violations will get rid of his assets before the RICO plaintiff can obtain a judgment and attachment. And the true reason for the remedy is that there may well exist other parties seeking to sequester the defendant's assets who can accomplish this purpose before a successful adjudication on the merits is ever reached.
Note, 14 Fla.St.U.L.Rev. 975, 983 (1986). Having filed a verified complaint, posted a surety bond, and made a sufficient showing of immediate danger of significant loss, BIV is entitled, as a matter of law, to a temporary injunction.[4] We certify conflict with our sister court's decision in Finkelstein.
The order dissolving the temporary injunction is reversed, and the cause is remanded with directions to reinstate the injunction.
BASKIN, Judge (dissenting in part, concurring in part).
The issue for review is whether the Florida Racketeer Influenced and Corrupt Organization [RICO] Act, Chapter 895, Florida Statutes (1985), grants the trial court authority to issue a temporary injunction restraining disposition of assets merely upon the filing of a bond and a showing of immediate danger of significant loss or damage. § 895.05(6), Fla. Stat. (1985). Prior to the enactment of RICO statutes, common law permitted temporary injunctive relief only upon a showing of (1) irreparable harm, (2) a clear legal right, (3) an inadequate remedy at law, and (4) consideration of the public interest. Finkelstein v. Southeast Bank, N.A., 490 So.2d 976 (Fla. 4th DCA 1986); Cordis Corp. v. Prooslin, 482 So.2d 486 (Fla. 3d DCA 1986). The Florida RICO Act has eliminated the necessity of showing irreparable damage and has substituted the showing of immediate danger of significant loss or damage as a prerequisite to the issuance of a preliminary injunction when an aggrieved person institutes a proceeding under section 895.05(1). According to the Finkelstein decision, however, proof of the remaining three common law elements is still necessary.
The majority cites and follows the reasoning of a recent case note about Finkelstein, Note, Plaintiffs Under Florida RICO Must Meet Traditional Equity Requirements When Seeking Temporary Injunctions to Safeguard Assets, 14 Fla.St. U.L.Rev. 975, 983 (1986),[1] in which the author maintains that only a bond and a showing of immediate danger of damage are necessary for a temporary injunction under the RICO statute. The author distinguishes subsection 1 from subsection 6 of section 895.05 by suggesting that subsection 6 pertains to temporary and permanent injunctive relief whereas subsection 1 applies only to permanent injunctive relief. The majority adopts this interpretation and concludes that Finkelstein's decision to impose common law requirements on the RICO requirement is erroneous. As a result, the majority declines to follow Finkelstein and chooses instead to approve the issuance of an injunction when only a minimal showing has been made. Under the majority decision, very little is required to initiate the full effect of the RICO statute.
I disagree with the majority's premise. The majority's assertion that section 895.05(1) refers only to permanent injunctions is incorrect. Section 895.05(1) sets forth a nonexclusive list of orders the court may issue to enjoin violations of section 895.03. *1328 It states that the court may enjoin violations under 895.03 by issuing appropriate orders and judgments, including but not limited to the orders enumerated in sections 895.05(1)(a)-(e). That section applies not only to permanent injunctions, but also to temporary injunctions.[2]See Roush v. State, 413 So.2d 15 (Fla. 1982) (applying section 812.035(1), Florida Statutes (1977), which is identical to section 895.05(1)); Finkelstein; Hudson Nat'l Bank v. Shapiro, 695 F. Supp. 544 (S.D. Fla. 1988) (applying Florida law); Federal Deposit Ins. Corp. v. Antonio, 649 F. Supp. 1352 (U.S.D.C. Col. 1986), affirmed, 843 F.2d 1311 (10th Cir.1988) (applying an identical Colorado RICO statute); cf. DeLisi v. Smith, 401 So.2d 925 (Fla. 2d DCA 1981). Section 895.05(6) did not merely codify the common law; it altered it by deleting the problematic "irreparable harm" and substituting the lesser showing of immediate danger of significant loss prior to the issuance of a temporary injunction which follows the legislative intent to provide "new criminal and civil remedies and procedures... ." RICO Act, ch. 77-334, 1977 Fla. Laws 1399.
In my view, the language of subsection 6 expressly affords a party proceeding under subsection 1 relief "in conformity with the principles that govern the granting of injunctive relief from threatened loss or damage in other civil cases, except that no showing of special or irreparable damage to the person shall have to be made." § 895.05(6), Fla. Stat. (1985). Eliminating the need to demonstrate a clear legal right to relief would authorize indiscriminate penal or punitive conduct without providing constitutional protection. Under the majority opinion, upon the mere suggestion of a RICO claim, and without establishing that RICO conduct is actually involved, an aggrieved person may secure an injunction. Such a result is contrary to the law of this state. A temporary injunction is an extraordinary remedy to be used sparingly because it serves to deprive a party of the use of property prior to a final adjudication of the merits of the opposing party's claim. Hiles v. Auto Bahn Fed'n, Inc., 498 So.2d 997 (Fla. 4th DCA 1987); Thompson v. Planning Comm'n of the City of Jacksonville, 464 So.2d 1231 (Fla. 1st DCA 1985); Jennings v. Perrine Fish Mkt., 360 So.2d 434 (Fla. 3d DCA 1978); see also State v. Beeler, 530 So.2d 932 (Fla. 1988) (temporary injunction without notice). If the legislature had wished to facilitate even further the issuance of injunctions, it could have eliminated the statute's reference to other civil cases; it declined to do so, and thereby recognized that the issuance of a temporary injunction without common law protections is not in the public interest. The standards for obtaining injunctive relief under RICO facilitate the legal process, but they do not discard basic protections.
Despite my conclusion that Banco is not entitled to an injunction merely upon posting a bond and demonstrating immediate danger of significant loss or damage, I would not immediately dissolve the injunction. The trial court placed Banco in an intolerable and even stultifying position. On one hand, the court ruled that Banco was not entitled to the injunction because Banco had not traced the funds, see Shouten v. Utah Int'l, Inc., 515 So.2d 366 (Fla. 4th DCA 1987); § 895.03, Fla. Stat. (1987); on the other hand, the court denied Banco's motion for expedited discovery, thereby precluding Banco from acquiring the information necessary to trace the funds. The resultant "Catch-22" situation violates the spirit of the RICO statute. That statute endeavors to enlist private individuals in the effort to eradicate organized crime by relaxing the requirements for injunctive relief. See generally Note, Illegal Assets Once Removed; Easy Avoidance of Civil RICO Remedies, 16 Stetson L.Rev. 439 (1987).
Under these circumstances, the trial court's ruling, predicated on a limited record, is premature. I would remand to *1329 the trial court for entry of an order expediting discovery and for an evidentiary hearing to determine Banco's entitlement to an injunction. At that hearing, the trial court should consider all factors pertinent to the issuance of a temporary injunction; the showing required by the majority is dangerously inadequate. Pending the outcome of the evidentiary hearing, I would maintain the temporary injunction. See DeLisi, 401 So.2d at 925.
NOTES
[1] Section 895.03(3), Florida Statutes (1985), provides that

[i]t is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.
[2] BIV alleged 110 criminal acts. The verified complaint was accompanied by copies of forged bills of lading and the sworn affidavit of an independent freight forwarder corroborating certain of the forgeries.
[3] See, e.g., Federal Deposit Ins. Co. v. Antonio, 843 F.2d 1311 (10th Cir.1988) (federal law not relevant in determining district court's power to issue preliminary injunction under state RICO act; in FDIC action as bank's receiver to recover funds allegedly diverted from bank due to fraudulent scheme, district court had authority under state RICO act to freeze assets not traceable to illegal conduct).
[4] We need not reach the merits of the constructive trust theory advanced by BIV and rejected by the trial court because BIV is entitled to preliminary injunctive relief under section 895.05(6), Florida Statutes (1985). We note that the decision in USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94 (6th Cir.1982), relied upon by BIV in support of its "novel theory," represents an example of a federal court invoking common law doctrine to issue a temporary injunction freezing the defendant's assets because the federal RICO statute makes no express provision for such relief.
[1] For a contrary point of view, see Note, The Legal Assets Once Removed; Easy Avoidance of Civil RICO Remedies, 16 Stetson L.Rev. 439 (1987).
[2] Subsection (1)(d) of section 895.05 refers specifically to temporary relief, namely the suspension of a license, permit or approval granted by the state.